**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, ) | |
| Plaintiff, ) | No. CR 17-1904-TUC-CKJ (LCK) |
| vs. ) | **ORDER** |
| Edgar Antonio Casahonda, et al., ) | |
| Defendants. ) | |

On March 17, 2021, Magistrate Judge Lynnette C. Kimmins issued a Report and Recommendation ("R&R") (Doc. 430) in which she found the Motion to Dismiss (Doc. 230) filed by Defendant Edgar Antonio Casahonda, to which Defendants de la Cruz Moreno (Moreno), San Miguel, Romero, Flores, Rubio, and Antonio Adrian Nieto-Macias ("Nieto-Macias") joined, had failed to make a prima facie case of an equal protection violation. Magistrate Judge Kimmins, therefore, recommends the Motion to Dismiss be denied as to all Defendants.

Further, Magistrate Judge Kimmins found that the arrest of Defendants Casahonda, Moreno, and San Miguel, and the seizure of Casahonda's currency, violated their Fourth Amendment rights against unlawful seizure. Additionally, the magistrate judge found the search of San Miguel, the second search of the vehicle, Casahonda's July 27, 2017, statement, San Miguel's July 27, 2017, and August 2, 2017, statements, Moreno's July 27, 2017, and August 16, 2017, statements, and the ATF 4473 Forms obtained from Ammo AZ and R&A Tactical in August 2017 were all fruit of the illegal arrests and seizures. Therefore, Magistrate Judge Kimmins recommends that all evidence obtained on July 27, 2017, or

during ATF's investigation as a direct result of the unlawful arrests and seizures that day, be suppressed as to the Defendants whose rights were violated. However, because Defendants have not presented evidence that an agent of the government intentionally concealed the location in which the receipts were found, and no harm arose from the erroneous information, the magistrate judge found additional sanctions should not be imposed. She recommends, therefore, the Motion to Suppress (Doc. 125) by Defendants Casahonda, Moreno, and San Miguel as to the specific identified evidence be granted, but the Motion to Suppress be denied as to the remaining Defendants.

Additionally, Magistrate Judge Kimmins recommends this Court deny Defendants' request for sanctions based on the mishandling of evidence (Doc. 299).

The government, Casahonda, and Nieto-Macias have each filed objections (Docs. 445, 446, 447); responses (Docs. 448, 449, 450) have been filed.

The standard of review that is applied to a magistrate judge's report and recommendation is dependent upon whether a party files objections – the Court need not review portions of a report to which a party does not object. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). However, the Court must "determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instruction." Fed. R. Civ. P. 72(b)(3); *see also* 288 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.").

I. *Report and Recommendation – Factual Background*

Defendant Casahonda asserts the magistrate judge failed to credit definitive evidence regarding the distance between the truck and following vehicle being driven by Casahonda, i.e., a video tape (Exh. 22). Casahonda also points out that the video tape provides objective evidence of Casahonda's interaction with Trooper Greg Andersen ("Trooper Andersen").

The Court has reviewed the video tape and considered this evidence in reviewing the R&R and issuing this Order.

Additionally, Casahonda disputes certain statements in the R&R, without specifically objecting to the statements. For example, Casahonda points out that the magistrate judge noted Andersen "testified that [the Arizona Department of Public Safety ("DPS")] had a policy requiring that he issue a written warning. No such policy was ever produced in court and Andersen's claim of such a policy was contradicted by investigator [Raymond] Pacheco's testimony that he had been stopped numerous times by [] DPS troopers and had been given verbal warnings." Casahonda Obj. (Doc. 446, p. 4), *citation omitted*. The Court finds this is not an objection to a finding (i.e., the statement by the magistrate judge is not disputed or false), but accepts Casahonda's clarifications as to such disputes. Similarly, Nieto-Macias includes a section entitled "Objections to findings in Factual Basis" within his Objection. However, Nieto-Macias does not object to any specific finding of the magistrate judge. Rather, he simply sets forth facts that place into context and/or clarify the findings of the magistrate judge. The Court adopts the factual background of the R&R, to which there are no specific objections, but accepts and considers the clarifications herein.

II. *Motion to Suppress* (Doc. 125)

Defendants argue all evidence resulting from the July 27, 2017, stop of the vehicle and subsequent search and seizure should be suppressed. The magistrate judge recommends the Motion to Suppress be granted in part. Specifically, the magistrate judge recommends that all evidence obtained as a direct result of violations be suppressed as to each Defendant whose rights were violated:

> This includes the currency and any evidence obtained in the second search of the car on July 27, 2017, as to Defendant Casahonda; receipts as to Defendant San Miguel; as to each Defendant, any statement given on July 27, 2017, see United States v. Patzer, 277 F.3d 1080, 1086 (9th Cir. 2002) (holding that statements made by a defendant after an illegal arrest are fruit of the poisonous tree despite proper Miranda warnings) and his cell phone(s) (and its contents) seized on July 27, 2017. Additional statements or evidence obtained after July 27, 2017, also are subject to suppression as the fruit of whichever Defendant's rights were violated by an unlawful search or

seizure on July 27. This includes evidence from any investigative steps by SA Sutterley or ATF which were the result of the unlawful arrest and seizures conducted by DPS. As SA Sutterley testified, this includes, as to Defendant San Miguel, his August 2, 2017 interview, and the evidence obtained in August 2017 from Ammo AZ and R&A Tactical; and, as to Defendant Moreno, his August 16, 2017 interview.

R&R (Doc. 430, pp. 20-21).

### A. *Nieto-Macias Objections*

Nieto-Macias argues the magistrate judge erred in determining he abandoned a legitimate expectation of privacy against seizure because he maintained insurance and current license tags on the vehicle. Nieto-Macias relies upon *Rakas v. Illinois*, 439 U.S. 128, 143 (1978), for this assertion. In *Rakas*, the Supreme Court determined vehicle passengers, who did not own the car or claim possession of the items seized, had no expectation of privacy in the car. From this, it appears Nieto-Macias is arguing an implied reverse conclusion: the owner of the vehicle, if he maintains its legal status, necessarily has an expectation of privacy whether he is with the vehicle or not. *Rakas* simply does not stand for this assertion. Rather, while the *Rakas* Court stated that "one who owns or lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy by virtue of this right to exclude[, . . .] even a property interest in premises may not be sufficient to establish a legitimate expectation of privacy with respect to particular items located on the premises or activity conducted thereon" *Rakas*, 439 U.S. at 143 n. 12.

Generally, "the owner of an automobile has a legitimate expectation of privacy in the car, and therefore he has standing to object to an unconstitutional search." *United States v. Thomas*, 447 F.3d 1191, 1197 (9th Cir. 2006); *United States v. Wanless*, 882 F.2d 1459, 1462 (9th Cir. 1989). However, as stated by the magistrate judge:

> [W]hen evidence is seized from the open passenger area of a vehicle during a time the owner had loaned the vehicle to someone else for their exclusive use, the owner does not have an expectation of privacy allowing him to challenge the seizure. *See United States v. One 1977 Mercedes Benz*, 450 SEL, VIN 11603302064538, 708 F.2d 444, 449-50 (9th Cir. 1983); *United States v. Vizcarra*, 835 F. Supp. 1160, 1162 (D. Ariz. 1993).

R&R (Doc. 430, p. 10). The Court agrees with the conclusion of the magistrate judge that

Nieto-Macias does not have the right to challenge the search of the vehicle. The Court will overrule this objection. Further, Nieto-Macias having no standing to contest the search and seizure, the Court will overrule Nieto-Macias's additional objections relating to the stop/seizure and search.

The Court will adopt this portion of the R&R.

### B. *Casahonda Objections*

Casahonda argues the magistrate judge erred in determining the stop and detention of Casahonda was lawful. Although Trooper Andersen testified he stopped Casahonda for not following a truck at a safe distance, Casahonda asserts he was following the truck at a safe distance. However, a review of the video recording from Trooper Andersen's dashboard camera supports a conclusion that Casahonda was not following the truck at a safe distance, especially considering the broad discretion afforded Trooper Andersen in determining whether a vehicle is following too closely. *See e.g. United States v. Cruz*, 400 F. Supp. 3d 844, 849 (D. Ariz. 2019), *citation omitted*.

Additionally, Trooper Andersen had received information that Casahonda's vehicle had been de-insured. Although Trooper Andersen testified that the information available from the Motor Vehicle Division is not always current, there is no information before the Court that there is systemic or widespread errors in this database. In these circumstances, it was reasonable for Trooper Andersen to rely on the information to stop the vehicle. *See Herring v. United States*, 555 U.S. 135, 146–47 (2009) (declining to apply exclusionary rule because officer's reliance on computer database is reasonable where no evidence of routine or widespread errors on computer database exist); *id*. at 146 ("In a case where systematic errors were demonstrated, it might be reckless for officers to rely on an unreliable warrant system."); *Arizona v. Evans*, 514 U.S. 1, 17 (1995) (O'Connor, J., concurring) ("Surely it would not be reasonable for the police to rely ... on a recordkeeping system ... that routinely leads to false arrests.").

The Court finds reasonable suspicion existed to stop Casahonda's vehicle. The Court will overrule this objection and will adopt this portion of the R&R.

Casahonda also argues that the detention was unreasonably extended. He asserts there was no reasonable suspicion to investigate whether the vehicle was stolen, the fact that Trooper Andersen had failed to stock his printer paper does not justify a delay to issue a written warning when DPS troopers also give oral warnings, especially since ultimately the written warning was not printed and given to Casahonda until he was at the substation and arrested. Casahonda acknowledges the circumstances (e.g., older and larger vehicle, vehicle registered to a post office box, differing stories as to the purpose of the trip to Phoenix, over-friendliness and then confrontational nature of Casahonda, and refusal to consent to a search) may have supported Trooper Andersen's subjective suspicions, but they do not constitute objectively reasonable inferences required by the FouTrooper Andersenh Amendment.

Casahonda argues it should be "determined to be unreasonable to extend a detention for a warning when the officer is negligent about being equipped to print the warning. Casahonda Obj. (Doc. 446, p. 4). A law enforcement officer conducting a traffic stop may question a suspect about issues unrelated to the purpose of the stop, but cannot unduly prolong the detention. *Muehler v. Mena*, 544 U.S. 93, 101 (2005); *Rodriguez v. United States*, 575 U.S. 348, 354 (2015) (authority for a seizure ends "when tasks tied to the traffic infraction are—or reasonably should have been—completed" because the purpose of a traffic stop is to address the traffic violation); *United States v. Mendez*, 476 F.3d 1077, 1080 (9th Cir. 2007). Here, the delay attributed to the request for paper and back-up by Trooper Andersen was approximately ten minutes. Reporter's Transcript ("RT") 11/17/20, p. 60. As he was waiting for the means to complete the purpose of the traffic stop, this minimal delay to wait for the paper was not unreasonable.

Additionally, the magistrate judge stated:

Trooper Andersen could not complete the written warning for following too closely until a second trooper arrived with paper. Therefore, the time that elapsed until Barry Anderson arrived was reasonably necessary to effectuate the purpose of the stop. However, when he arrived with paper, Trooper Andersen did not complete the

warning as he could have done. Instead, he extended the detention to run his dog around the exterior. Because this delayed him from completing the purpose of the stop, which was to enforce the traffic laws, it was unlawful absent reasonable suspicion to detain the occupants of the vehicle for a longer period.

* * * * *

Having closely reviewed the video, the Court finds most of these observations were substantiated. Although Defendant Casahonda and his passenger identified the same destination for their trip, they identified different purposes for it. Although Casahonda's "friendliness" was not marked, in the first several minutes of the stop he was quite chatty. This was in contrast to his behavior as the stop continued, when he shifted from talkative to silent, and then to assertive or mildly confrontational. Trooper Andersen identified several characteristics of the vehicle that suggested to him, based on his training and experience, that the car could be involved in drug smuggling: registration address, type of vehicle, de-insured status, and the smell of Bondo. These observations, taken together, satisfied reasonable suspicion to believe that the occupants of the vehicle were engaged in illegal activity. Therefore, it was reasonable to extend the detention briefly in order for Trooper Andersen to conduct a dog sniff of the vehicle.

R&R (Doc. 430, p. 15). This Court has similarly reviewed the video and agrees with the findings of the magistrate judge. Because Trooper Andersen developed an independent reason to detain Casahonda beyond the period of time necessary to complete the traffic investigation, he was permitted to prolong the detention. *See United States v. Evans*, 786 F.3d 779, 788 (9th Cir. 2015), *citing United States v. Mendez*, 476 F.3d 1077, 1080 (9th Cir. 2007). Indeed, the detention of a suspect during an investigative stop is justified while officers diligently pursue the means of investigation. *United States v. Sharpe*, 470 U.S. 675, 685-87 (1985) (rejecting a "bright line" rule of time limitation on investigative stops).

The Court will overrule this objection and adopt this portion of the R&R.

C. *USA Objections*

The government argues the magistrate judge erred in determining probable cause did not exist to arrest Defendants and seize the currency in the vehicle. The government asserts probable cause existed to transport the three occupants of the vehicle for the crime of money laundering upon finding the money in the car. Indeed, evidence other than the "discovery of drugs or paraphernalia may establish the requisite probable cause." USA Obj. (Doc. 445, p. 8), *citing United States v. Padilla*, 888 F.2d 642, 644 (9th Cir. 1989). Here, the

government argues other evidence provided probable cause, including that Trooper Andersen noticed several things that were consistent with drug trafficking:

> the age and model of the vehicle, registration in Nogales, registration to a P.O. box, and travel along a prominent drug corridor. Trooper Andersen smelled the odor of bondo, the defendants displayed very suspicious behavior and gave considerably different reasons for their travel, and the drug detection dog alerted to an odor of narcotics within the vehicle. The large amount of cash - $8,691 - was concealed in a fast food bag and hidden under the driver's seat of the vehicle, which is highly unusual. Also, defendant Casahonda's response when asked about the cash was that it was under the "legal threshold," which Trooper Andersen inferred to be a referral to the $10,000 limit to the amount of currency that can be taken out of the United States without having to declare it at the Port of Entry. The fact that defendant Casahonda was aware of this requirement and was concerned with avoiding declaration of the cash further suggests the defendants were committing a criminal offense involving the cash. The absence of drugs in the vehicle does not erase the existence of all these suspicious circumstances.

USA Obj. (Doc. 445, pp. 8-9). The government also points out that "Casahonda became increasingly insistent upon being released [and a] trained canine alerted to an odor of narcotics within the vehicle." *Id*. at 8. Further, the government argues the statements purported to be innocent explanations do not negate a finding of probable cause and the different stories about the reason for Defendants' travel demonstrates they were being dishonest during the encounter with Trooper Andersen.

Casahonda points out that, although the government argues Bondo is commonly used to mask the odor of illegal items, no testimony was presented to support that argument. Casahonda Resp. (Doc. 450, p. 2). Indeed, the Court is unaware of any Ninth Circuit authority supporting this assertion. Similarly, the government argues that Trooper Andersen noticed Casahonda had difficulty standing still, yet Trooper Andersen did not testify to this observation. Without testimony to establish these facts, the Court disregards the argument by the government as to these "supporting" facts.

Trooper Andersen did testify that the older model four-door sedan, which was registered to a P.O. Box out of Nogales, raised suspicions. RT 12/1/20, pp. 36-7. However, Trooper Andersen acknowledged that the registration to a P.O. Box or the fact the vehicle is an older model four door sedan are insufficient alone to justify a stop. Trooper Andersen also testified the vehicle was traveling on the Interstate 10 corridor which, "in drug

interdiction, is one of the largest distribution centers for drugs throughout the United States."
RT 12/1/20, pp. 9-10.

The magistrate judge stated:

> For Trooper Andersen to possess probable cause, he needed information from which he could believe that the currency found in the vehicle constituted the proceeds of, or was intended to be used for, another offense. He did not testify to what offense(s) he believed the money was connected. His reasonable suspicion was founded on a belief that Defendants may have been engaged in drug trafficking, which allowed him to extend the stop for the purpose of running his drug-sniffing dog around the vehicle. However, once the troopers' search of the vehicle found no drugs, drug paraphernalia, or hidden compartment, and the passenger's acknowledgment of smoking marijuana offered a source for the dog's alert, those suspicions lost much of their weight. Additionally, as Trooper Andersen testified, the receipts did not contribute to the probable cause equation because he made the decision to arrest all three Defendants prior to finding the receipts in Defendant San Miguel's wallet.
>
> Trooper Andersen testified that the arrests were based almost entirely on the finding of the $8500 under the driver's seat and his belief that Defendants' behavior was suspicious (somewhat inconsistent statements and nervous behavior). Defendant Casahonda informed Trooper Andersen that the money had a legitimate origin as savings from his work. Without more, the information known to Trooper Andersen did not establish probable cause because it was not sufficient to persuade a prudent person that Defendants were engaged in money laundering. *See United States v. Padilla*, 888 F.2d 642, 644 (9th Cir. 1989) (holding that a large sum of cash, absent other "persuasive circumstantial evidence" of illegal activity, does not establish probable cause for a forfeiture). At oral argument, the government identified several factors as a basis for probable cause that Trooper Andersen did not identify in his testimony: the driver was not the registered owner; the canine hit on the vehicle; and the passenger's admission of using marijuana. Although this information was available to Trooper Andersen, he did not testify that it informed his decision to arrest the occupants of the vehicle. However, even if the Court were to consider these additional factors, in conjunction with Trooper Andersen's testimony, the trooper did not have probable cause to believe Defendants were participating in money laundering. Therefore, Defendants' arrest violated their Fourth Amendment right against unreasonable seizure.

R&R (Doc. 430, pp. 19-20).

Although the government argues other suspicious behavior, in addition to the large sum of cash, supports a finding of probable cause, the Court agrees with the magistrate judge that, when a search of the vehicle produced no drugs, drug paraphernalia, or hidden compartment, along with the passenger's acknowledgment of smoking marijuana which provided a source for the dog's alert, the weight of this other suspicious behavior is minimized. The government argues this other suspicious behavior provides probable cause for an underlying criminal offense of drug trafficking; specifically, the government states,

"the alert and cash are only two of the many facts and circumstances that led to Trooper [G.] Andersen's belief of money laundering and drug trafficking." USA Obj. (Doc. 445, p. 10). Although Trooper Andersen testified drug issues are common in this corridor, RT 11/27/30, pp. 66-67, he arrested defendants for "taking money to Phoenix and purchasing guns for a straw purchase." RT 11/17/20, pp. 167-69.

The Court finds this other suspicious behavior simply does not provide "persuasive circumstantial evidence." *United States v. Padilla*, 888 F.2d 642, 644 (9th Cir. 1989), *citation omitted*. For example, in *United States v. U.S. Currency, $83,310.78*, 851 F.2d 1231 (9th Cir.1988), the Ninth Circuit found that $125,410 in cash, wrapped in a brown plastic shopping bag, that the occupant had kicked behind the bathroom door, combined with the occupant's prior arrest and convictions for drug possession, demonstrated probable cause to believe that a connection existed between illegal drug transactions and the money. Here, Casahonda's assertion of his right not to consent to a search and his expressed desire to leave do constitute affirmative actions of concealment that were present in *$83,310.78*. Nor, for example, was Casahonda and/or his vehicle surveilled at a location suspected to be a site for drug transactions. *See Padilla*, 888 F.2d at 644-45.

The Court will overrule the government's objection and adopt this portion of the R&R.

D. *Independent Source for Evidence*

The magistrate judge stated:

> The government argued that it can establish an independent source for all the evidence it needs to prove the charged crimes at trial and presented some evidence of its investigation at the evidentiary hearing, although it did not include any argument on this topic in its written briefing. Because the full extent of this topic has not been addressed fully by both parties, the Court does not complete that analysis now. After the District Court issues a final ruling on the instant motion, counsel shall meet and confer to determine any unresolvable issues that require further attention from the Court.

R&R (Doc. 430, p. 21). The Court will adopt this portion of the R&R and will direct counsel to meet and confer to determine any unresolvable issues and to file any needed motion

regarding an independent source for evidence on or before July 30, 2021.

III. *Motion to Dismiss* (Doc. 230)

Defendants argue that, because Trooper Andersen stopped their vehicle on July 27, 2017, extended their detention, and searched and arrested them, at least in part, because of their Hispanic ethnicity, the indictment should be dismissed as discriminatory law enforcement in violation of the Equal Protection Clause. The magistrate judge recommends the Motion to Dismiss be denied.

A. *Casahonda Objections*

Casahonda argues the testimony and report of Dr. Fred Solop establishes a discriminatory effect needed to show an equal protection violation. *See Lacey v. Maricopa Cty.*, 693 F.3d 896, 920 (9th Cir. 2012) (a defendant "must demonstrate that enforcement had a discriminatory effect and the police were motivated by a discriminatory purpose[]" to establish a Fourteenth Amendment equal protection violation). Dr. Solop's testimony included a discussion regarding his own research and analysis, a study and report completed by Dr. Robin Engel ("Dr. Engel"), a DPS consent decree, recommendations that Dr. Engel made that her findings be "disseminated to DPS supervisory personnel with a mandate to investigate the reasons for the racial and ethnic disparities she had found[,]" and that, while DPS continued to collect data, it did "not follow Dr. Engel's recommendations to analyze the data and to change supervisory behavior to address racial and ethnic disparate treatment." Casahonda Obj. (Doc. 246, p. 8). However, this Court agrees with the magistrate judge that, because a discriminatory purpose has not been shown, the issue of whether enforcement had a discriminatory effect need not be resolved. The Court, therefore, will not address Casahonda's arguments regarding the discriminatory effect and the statistics regarding DPS in general. *See also* R&R (Doc. 430, p. 24 n. 6).

Additionally, Casahonda disagrees with the magistrate judge's statement that there is

no direct evidence that Trooper Andersen acted with discriminatory purpose. Disputing the statement that there was no evidence Trooper Andersen knew the ethnicity of the driver of the vehicle, Casahonda points out that the trooper knew from his vehicle computer that the car was registered to an individual with a Hispanic surname and knew the ethnicity of the driver once the vehicle had been stopped.

Casahonda also points to Dr. Solop's statistical evidence that Trooper Andersen was three and half times as likely to stop Hispanic drivers as white drivers and that he detains Hispanic drivers longer than he does white drivers. As stated by the magistrate judge, "Dr. Solop testified that Trooper Andersen used his discretion differently than other similarly situated officers and his decisions disadvantaged Hispanic drivers." R&R (Doc. 430, p. 25), *citation omitted*. Trooper Andersen testified "he had never been provided with any data regarding his traffic stops and had never had his performance reviewed by any supervisor regarding whether he had behaved to favor white motorists and disfavor Hispanics." Casahonda Obj. (Doc. 246, p. 10), *citing* RT 11/17/20, pp. 78-79.

Casahonda argues that evidence of discriminatory purpose "is not limited simply to knowing the ethnicity of the driver before stopping the vehicle but also how the occupants are treated after the stop when the ethnicity of the driver and passengers is known." Casahonda Obj. (Doc. 446, p. 7). He argues that discriminatory purpose is established when the police misconduct is part of a pervasive pattern. *Rosenbaum v. City & Cty. of San Francisco*, 484 F.3d 1142, 1153 (9th Cir. 2007).

However, in the context of civil rights litigation seeking injunctive and declaratory relief, *Rosenbaum* recognized a plaintiff needs to establish more than repeated incidents of misconduct. *Id.*, *citing Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1500 (9th Cir.1996). Indeed, as summarized by the magistrate judge:

> [T]he Ninth Circuit noted that even "exceptionally clear" statistical proof is not sufficient, alone, to prove discrimination except with respect two issues, jury selection or Title VII multiple regression analyses. *United States v. Redondo-Lemos*, 27 F.3d 439, 443 (9th Cir. 1994); *see also Village of Arlington Heights* [*v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977)] (holding that to establish discriminatory purpose, "impact alone is not determinative" unless the pattern is as stark as that in *Yick Wo* [*v.*

- 12 -

*Hopkins*, 118 U.S. 356, 374 (1886); *see also United States v. Turner*, 104 F.3d 1180, 1185-86 (9th Cir. 1997) (holding that it is not enough to establish that those charged with a particular offense are almost entirely of the same ethnicity). Review of this controlling caselaw reveals that statistical evidence is not sufficient to prove that Trooper Andersen acted with discriminatory purpose towards Defendants.

R&R (Doc. 430, pp. 25-26). In this case, Dr. Solop testified that the discriminatory analysis did not include data as to, for example, demographic statistics as to the drivers on the roadways in Arizona, window tinting, the issuance of repair orders, or how often Trooper Andersen worked closer to the United States-Mexico border as compared to other troopers working areas not near the border. RT 11/16/17, pp. 127-28, 142-48. Further, he testified the racial breakdown for stops conducted by Trooper G. Anderson for following too closely was "similar to just all of his stops as a whole. RT 11/16/17, p. 146.[1]

The Court agrees with the magistrate judge that, while the evidence is statistically significant, it is not so exceptionally clear or stark, as exhibited in *Yick Wo*, such that it establishes a discriminatory purpose by Trooper Andersen. The Court finds a *prima facie* case that Defendants' ethnicity was a motivating factor in Trooper Andersen's stop of the vehicle or his subsequent actions during the stop has not been established. The Court will overrule this objection and deny the Motion to Dismiss.

Accordingly, after an independent review, IT IS ORDERED:

1.      The Report and Recommendation (Doc. 430) is ADOPTED.

2.      The Motion to Suppress (Doc. 125) is GRANTED as to Defendants Casahonda, Moreno, and San Miguel regarding all evidence obtained on July 27, 2017, or during ATF's investigation as a direct result of the unlawful arrests and seizures that day is granted, but DENIED as to the remaining Defendants.

3.      Counsel shall meet and confer to determine any unresolvable issues and to file any needed motion regarding an independent source for evidence on or before July 30, 2021.

---

[1]Dr. Solop testified that his report focuses on post-stop outcomes because all other data was not taken into consideration. RT 11/16/17, pp. 127-28.

1   4.      The Motion to Dismiss (Doc. 230) is DENIED.

2   5.      Defendants' request for sanctions based on the mishandling of evidence (Doc.

3   299) is DENIED.

4       DATED this 30th day of June, 2021.

5

6

7       _____
        Cindy K. Jorgenson
8       United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28